Filed 11/12/15  P. v. Zamora CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068693 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1200091) |
| PETER DIAZ ZAMORA III, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Richard T. Fields, Judge.  Affirmed, with directions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Annie Featherman Fraser and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Peter Diaz Zamora III (Zamora) guilty of second degree murder (Pen. Code, § 187, subd. (a)),[1] with a further finding that Zamora personally used a deadly and dangerous weapon (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)).  The trial court sentenced Zamora to a prison term of 16 years to life.

Zamora contends (1) the trial court prejudicially abused its discretion in sustaining an evidentiary objection to a question about whether Zamora appeared to be in his "right mind" during the murder; (2) the prosecutor committed misconduct by incorrectly stating the law during closing argument; and (3) a clerical error in the March 21, 2014 minute order recording the verdict should be corrected to state that a true finding was made only as to one sentencing enhancement.  Except for the third point, which the Attorney General concedes has merit, we reject Zamora's appellate arguments.  Accordingly, we direct the trial court to correct the March 21, 2014 minute order to properly reflect that a true finding was made only on a single sentencing enhancement, namely that Zamora personally used a deadly and dangerous weapon (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)), and in all other respects we affirm the judgment.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

Zamora, his three younger brothers (Samuel, Isaac and Nathaniel), and their mother, Desiree, attended a family gathering on the evening of January 27, 2012.[2] The gathering was held in the two-bedroom apartment where Samuel and Desiree lived with their roommate Jason Willis. Willis was present in the apartment during the gathering, along with Zamora's girlfriend, S., and Samuel's and Nathaniel's girlfriends. In addition to the adults, Zamora and S. brought along two children: their one-year old son P. IV (Baby), and S.'s eight-year old son A.J. By all accounts, there was a substantial amount of alcohol consumed during the evening by several of the family members, including Zamora, and witnesses reported that Willis was also drinking heavily and appeared very drunk.

It was decided that Zamora, S. and the children would stay overnight in the apartment, with the specific arrangement that the children and Desiree would sleep in Willis's bedroom, Zamora and S. would sleep in Desiree's bedroom, and Willis would sleep on a couch in the living room.

At some point in the evening, the children were put to sleep in Willis's room, while the adults stayed up. Later in the evening, Desiree went into the bedroom where

---

[2] For sake of clarity, we will refer to Zamora's family members by their first name, and we intend no disrespect by doing so.

the children were sleeping to check on them and started screaming, as she saw Willis sleeping on the bed, naked from the waist down, next to Baby P., who was fully clothed.

Nathaniel went to the bedroom and started punching Willis, as he yelled something like "What are you doing with the baby?" Zamora heard the screaming and ran to the bedroom where he joined Nathaniel in punching Willis in the ribs and legs. Isaac and Samuel also entered the room and joined in the assault to a lesser extent, with Samuel admitting to having pushed Willis during the incident, and Isaac admitting to having punched and kicked Willis several times.

Zamora was enraged during the incident and continued to punch Willis numerous times before deciding to go to the kitchen to get a knife. Zamora returned to the bedroom, where Willis was now on the floor, still being beaten by Nathaniel, and stabbed Willis four times: in the chest, the back and the upper arm. One of the stab wounds perforated Willis's heart.

As the level of violence escalated, Samuel and Isaac tried to stop Zamora and Nathaniel from continuing the assault. While being held back by Isaac, Zamora was forced to drop the knife, but managed to break free and stomped on Willis's head several times. Willis never fought back during the incident, although as the assault progressed he responded by curling up in a fetal position and trying to shield his face from the blows with his hands.

Zamora finally stopped assaulting Willis when Isaac confronted him and suggested that he think about what he was doing and check on Baby P.. Zamora punched a wall, left the room, and then fled the apartment along with S., the children, Samuel and

4

Samuel's girlfriend. A family member suggested that Baby be taken to the hospital. Baby's Peter exam at the hospital was normal and showed no sign of trauma.

Willis was taken by ambulance to the hospital at approximately 1:00 a.m. and died later that morning. Willis was badly beaten in the assault, with the fatal injury being the stab wound that pierced his heart.

At the request of the police, Zamora spoke with detectives the next day and admitted to what he had done. During the interview, Zamora stated that he beat and stabbed Willis in the manner we have described above, and admitted several times during the interview that he wanted to kill Willis as he was stabbing him. As Zamora explained his motive for the assault, "I just saw him naked and . . . knowing my son was in that bed I -- I flipped."

Zamora was charged with first degree murder (§ 187, subd. (a)) with the further allegation that he personally used a deadly and dangerous weapon (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)). At trial, the central issue was whether Zamora was guilty of first degree murder, as charged by the People, or of one of the lesser included offenses of second degree murder or voluntary manslaughter, as defense counsel argued. The jury was unable to reach a verdict on first degree murder, and the parties agreed to allow the jury to decide the lesser included offenses. The jury convicted Zamora of second degree murder, with a true finding on the deadly weapon enhancement. Zamora was sentenced to a prison term of 16 years to life.

5

II

DISCUSSION

A.    *The Trial Court Did Not Prejudicially Err in Sustaining the Prosecutor's Objection to a Question About Zamora's State of Mind*

During the cross-examination of Isaac, defense counsel asked if Zamora "even appear[ed] to be in his right mind" while assaulting Willis.  The prosecutor objected that the question "calls for a conclusion that he is not qualified to give, and it calls for speculation."  The trial court sustained the objection, explaining that "he may tell us his observations and what he heard."  Zamora contends that the trial court prejudicially erred in sustaining the objection.

"A trial court's ruling on the admission or exclusion of evidence is reviewed for abuse of discretion."  (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131 (*DeHoyos*).)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' "  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124 (*Rodrigues*).)

As Isaac was a layperson, not an expert witness, Evidence Code section 800 applies, which states that "[i]f a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: (a) Rationally based on the perception of the witness; and

6

(b) Helpful to a clear understanding of his testimony." Under this provision, "[a] lay witness generally may not give an opinion about another person's state of mind, but may testify about objective behavior and describe behavior as being consistent with a state of mind." (*DeHoyos*, *supra*, 57 Cal.4th at p. 130.)

Here, the question posed by defense counsel to Isaac directly inquired about Zamora's state of mind, instead of any objective behavior, by asking whether Zamora "appear[ed] to be in his right mind." As the trial court properly pointed out, Isaac could respond to questions that called for him to describe Zamora's behavior, from which a state of mind could be inferred, but Isaac was not qualified to opine directly on Zamora's state of mind.

Zamora argues that the trial court should not have sustained the objection because layperson testimony about a person's *demeanor* is properly admissible. Zamora cites *People v. Weaver* (2012) 53 Cal.4th 1056, 1086, in which the trial court properly admitted testimony that the defendant "displayed hatred" (*ibid*.) and *People v. Chatman* (2006) 38 Cal.4th 344, 397, in which the trial court properly admitted testimony that the defendant " 'seemed to be enjoying it' " when kicking someone (*ibid*). Here, in contrast the trial court was well within its discretion to conclude that by asking if Zamora appeared to be "in his right mind," defense counsel was not inquiring about Zamora's *demeanor*, such as the display of hatred or enjoyment at issue in *Weaver* and *Chatman*, but instead was seeking to solicit testimony about Isaac's opinion on Zamora's mental state. Accordingly, we conclude that the trial court was within its discretion to sustain

7

the objection on the ground that the question called for inadmissible layperson testimony about Zamora's state of mind, not tied to any specific description of behavior.

We also reject Zamora's argument for the independent reason that, even if there was any error in excluding the testimony, Zamora has not established that the error was prejudicial. In assessing whether an erroneous exclusion of evidence was prejudicial we inquire whether it is "reasonably probable that a more favorable result would have occurred had the evidence been admitted." (*Rodrigues*, *supra*, 8 Cal.4th at p. 1125, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)[3] Here, although Isaac was not permitted to respond to the question about whether Zamora appeared to be in his right mind, defense counsel managed to convey essentially the same concept by eliciting testimony from Isaac that during the assault Zamora "just wasn't really him," "turned into a different person," and "was not like his normal self." Further, S. testified to the same effect, explaining that when she confronted Zamora as he was walking back from the kitchen with the knife, "he wasn't even himself" and "wasn't even responding." Relying on the testimony that Zamora was not like himself during the assault, defense counsel was

---

3       Zamora contends that the trial court's evidentiary ruling implicated his constitutional right to due process and to present a defense, so that prejudice should be assessed based on the standard applicable to federal constitutional error. We reject the argument. "As a general matter, the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' . . . Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. . . . Accordingly, the proper standard of review is . . . not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension . . . ." (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103, citations omitted.)

specifically able to assert during closing argument that Zamora "was not in the right state of mind." Based on this evidence describing Zamora's behavior during the assault, which conveyed something very similar to the concept that Zamora was not "in his right mind," we conclude that even had the trial court allowed Isaac to testify whether Zamora appeared to be in his right mind during the assault, there is not a reasonable probability that Zamora would have received a more favorable result at trial.

B.     *Zamora Forfeited His Prosecutorial Misconduct Claims by Not Asserting Them at Trial*

Zamora next argues that the prosecutor committed misconduct during closing argument by making two different statements that purportedly misstated the law.

First, Zamora contends that the prosecutor incorrectly represented the law concerning a defendant's presumption of innocence by making the following statement during closing argument:

> "When you were brought in here, you were all told . . . that you have to believe that at that point in time that the defendant, in any criminal case, when he comes in here, he is presumed innocent. And that's fair.
>
> "And then his accuser has to bring in evidence to show he's guilty. . . . We also bring in people that are not associated with the D.A.'s office or the defense — you all — the neutral people, to take a look at the evidence, to make a decision, and decide guilt or not guilt. . . .
>
> "Now that evidence has been presented, that presumption, that cloak of innocence, that's gone. Witnesses have testified. That presumption of innocence is gone. He's been given his day in court. He's guilty of murder. And we'll get into that in just a second."

Second, Zamora contends that the prosecutor incorrectly stated the law regarding circumstantial evidence by making the following comment:

9

"You've heard a lot of talk in this case about molestation, and this is how this whole thing started. The thing I want to remind you of in this case is, when you were selected as jurors in this case one of the things that I said to you and the judge said to you, we were in a closed universe. You have to work with the evidence. You have to work with what has been presented. You can't infer. You can't make up facts. You can't do any of that. You have to work with what you heard in this trial. What the witnesses saw. What they talked about.

"And the state of the evidence is that there has been no witness that has testified that they saw [Willis] touch that baby. They can get up here and infer and talk about all of that other stuff, but not one witness has testified that they saw [Willis] touch that baby."

We begin our analysis with the observation that " '[t]he standards governing review of [prosecutorial] misconduct claims are settled. "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial." ' [Citation.] [¶] ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Hajek* (2014) 58 Cal.4th 1144, 1238 (*Hajek*).)

Without reaching the merits of Zamora's prosecutorial misconduct argument, we conclude that the argument has been forfeited. As we have explained, a defendant may generally not complain on appeal of prosecutorial misconduct unless he has timely objected and requested that the jury be admonished. (*Hajek*, *supra*, 58 Cal.4th at

10

p. 1238.)  Here, defense counsel did not object to the prosecutor's comments during closing argument, and made no request that the jury be admonished.  Although the "defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct" (*People v. Centeno* (2014) 60 Cal.4th 659, 674), Zamora has not established that an objection or admonition would have been futile.  Indeed, as the alleged misconduct consisted of purported misstatements of law, they could have easily been corrected by the trial court with an admonition that set forth the correct rule of law or directed the jury to look to the law as stated in the jury instructions rather than as argued by counsel.  As our Supreme Court recently pointed out in a similar context, "[a] prosecutor's misstatements of law are generally curable by an admonition from the court."  (*Ibid*.)

Zamora contends that he should be excused from objecting on the ground that "an objection would have been harmful because it would have called more attention to the prosecutor's comments, making the prejudice worse," and "redirecting jurors to the prosecutor's comments may have solidified the incorrect statements of the law in jurors' minds."  Our Supreme Court has expressly declined to create an exception for such a circumstance, explaining that "[t]he mere concern of highlighting alleged misconduct by objecting, without more, cannot serve as an exception to the general rule requiring an objection and request for an admonition" because such an "exception, of course, would swallow the rule requiring a timely objection and request for admonition, for one always runs the risk of drawing the jury's attention to an improper line of argument by registering an objection."  (*People v. Boyette* (2002) 29 Cal.4th 381, 432.)

11

We therefore conclude that Zamora may not pursue the issue of prosecutorial misconduct on appeal because the issue has been forfeited.

C.  *Zamora Has Failed to Establish That Counsel Was Ineffective for Failing to Object to the Alleged Prosecutorial Misconduct*

Acknowledging that defense counsel may have forfeited the prosecutorial misconduct argument by not objecting during closing argument, Zamora contends that defense counsel was ineffective for failing to object.

"A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.  The appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored."  (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel."  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  A defendant claiming ineffective assistance of counsel has the burden to show:  (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *Ledesma*, at pp. 216, 218.) Prejudice is shown when "there is a reasonable probability that, but for counsel's

12

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 699.)

Further, as is important here, "[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

Zamora has not established that defense counsel performed below the standard of care by failing to object to either of the prosecutor's statements.

First, as to the prosecutor's statement concerning the presumption of innocence, defense counsel could reasonably have determined that the statement was not objectionable. Specifically, defense counsel could have concluded that, put in context, instead of misstating the law on the presumption of innocence, the prosecutor was commenting that based on the evidence at trial, guilt had been proved beyond a reasonable doubt. Case law from our Supreme Court holds that a prosecutor may make a comment referring to the presumption of innocence having been " 'stripped away' " by the evidence presented at trial or the fact that the defendant " 'doesn't stay presumed innocent.' " (*People v. Panah* (2005) 35 Cal.4th 395, 463 [prosecutor's comment that the

13

evidence " 'stripped away' " the presumption of innocence was proper when "made in connection with his general point that, in his view, the evidence, to which he had just referred at length, proved defendant's guilt beyond a reasonable doubt"]; *People v. Booker* (2011) 51 Cal.4th 141, 183, 185 [prosecutor's comment that the presumption of innocence " 'should have left many days ago' " and the defendant " 'doesn't stay presumed innocent' " did not constitute misconduct because, in context, and in light of jury instruction on the burden of proof, it was clear that by referring to the presumption of innocence "the prosecutor . . . simply argued the jury should return a verdict in his favor based on the state of the evidence presented"].)  Based on this authority, defense counsel could reasonably have concluded that the prosecutor's comment regarding the presumption of innocence was not improper, as it was aimed at commenting on her view of the evidence presented at trial, not at claiming that Zamora was no longer entitled to a presumption of innocence during jury deliberations.

Second, as to the prosecutor's comments on circumstantial evidence, Zamora has failed to establish ineffective assistance of counsel on two grounds.  First, defense counsel reasonably could have concluded that there was nothing objectionable about the prosecutor's statement.  Zamora contends that in stating that the jury " 'can't infer,' " the prosecutor was improperly stating that the jury could not use circumstantial evidence in reaching a verdict and was required to rely solely on direct evidence.  However, defense counsel reasonably could have concluded that, put in the context, the jury would not have understood the prosecutor to be claiming that it could not rely on circumstantial evidence at all, but rather was commenting that the evidence did not support an inference of

14

molestation. Specifically, looking at the entirety of the prosecutor's comment, and the fact that it focused on the lack of evidence that Willis ever *touched* Baby, defense counsel reasonably could have concluded that the jury would have understood that the prosecutor was making the point that the jury could not infer a *molestation* occurred, and was not claiming that the jury could not rely on circumstantial evidence.

Second, Zamora has failed to establish prejudice from defense counsel's failure to object that the prosecutor misstated the law on circumstantial evidence. The jury was properly instructed on the use of circumstantial evidence pursuant to CALCRIM Nos. 223 and 225. Further, the jurors were instructed under CALCRIM No. 200 that they must follow the court's instructions, not the law as stated by the attorneys. Thus, even without an objection from defense counsel that the prosecutor misstated the law on circumstantial evidence, we presume that the jury followed the court's instructions, absent evidence to the contrary. (*People v. Johnson* (2015) 61 Cal.4th 734, 770 ["We presume the jurors understood and followed the instructions."]; *People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8 ["We presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate . . . ."].)

D.      *Correction of Minute Order Regarding Sentencing Enhancement*

Zamora was charged with a single sentencing enhancement, based on his personal use of a dangerous and deadly weapon. (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23).) The jury's verdict form, the oral pronouncement of the verdict at trial, and the abstract of judgment all correctly reflect a true finding on that single sentencing enhancement. However, the minute order for March 21, 2014, which sets forth the jury's verdict, shows

15

that there were two enhancements found true by the jury: "Jury Finds Enhancement (s) 1U in count 1 True. [¶] Jury Finds Enhancement (s) DW in count 1 True."

Zamora contends that because the minute order incorrectly states that two sentencing enhancements were found to be true, we should order the trial court to correct the erroneous minute order. The Attorney General concurs that the minute order is erroneous and should be corrected.

"A discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) "Courts may correct clerical errors at any time." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We accordingly direct the trial court to correct the erroneous minute order to reflect a true finding on only one sentencing enhancement, for personal use of a dangerous and deadly weapon. (See *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 744 [ordering correction of a minute order to reflect the court's oral pronouncement of judgment as reflected in the reporter's transcript]; *People v. Moses* (2011) 199 Cal.App.4th 374, 380 [same].)

DISPOSITION

The trial court is directed to correct the March 21, 2014 minute order to properly reflect that a true finding was made only on a single sentencing enhancement, namely that Zamora personally used a deadly and dangerous weapon (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)).  In all other respects the judgment is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.